John J. LANCELLOTTA,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant,
Appellee.

No. 86–1012.

United States Court of Appeals,
First Circuit.

Submitted June 6, 1986.

Decided Sept. 11, 1986.

Barry Best, Rhode Island Legal Services, Inc., Providence, R.I., on brief for plaintiff, appellant.

Everett C. Sammartino, Asst. U.S. Atty., and Lincoln C. Almond, U.S. Atty., Providence, R.I., on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

COFFIN, Circuit Judge.

Claimant-appellant John Lancellotta sought Social Security disability benefits on the basis of a heart problem, head injury, and nervousness. The Administrative Law Judge concluded that Lancellotta suffered from a severe mental impairment and was incapable of performing his past work, but that he nevertheless was not disabled because there existed significant numbers of low-stress jobs that Lancellotta could do. The Appeals Council denied a request for review, adopting the ALJ's decision as the final decision of the Secretary. The district court upheld the Secretary's determination, and Lancellotta now appeals on the ground that the ALJ failed to determine whether there were any specific jobs Lancellotta could perform in light of his disability.

Lancellotta, who is 32 years old and lives with his father and brother, completed high school and attended two years of junior college. He has not worked since May 1979 when he suffered a head injury, which apparently led to the mental impairment recognized by the ALJ. Because the ALJ found that Lancellotta's impairment was "severe" within the meaning of 20 C.F.R. § 416.921, and that he could not return to any of his former jobs (busboy/waiter; cashier/clerk; taxicab driver/dispatcher; office manager), the inquiry as to whether Lancellotta was disabled focused on whether there existed, "in significant numbers", 42 U.S.C. § 1382c(a)(3)(B), other jobs in the regional or national economy that he could nonetheless perform. *See* 20 C.F.R. § 416.-920(f). The burden of showing the existence of other jobs was on the Secretary. *Sherwin v. Secretary of Health and Human Services*, 685 F.2d 1, 2 (1st Cir.1982).

Lancellotta submitted several medical reports detailing both physical and emotional

ailments, including "severe chest pain", "severe cardiac neurosis", "severe anxiety and depression", "chest pain syndrome and severe anxiety syndrome" and "agoraphobia". Three doctors concluded that Lancellotta was totally incapacitated as a result of anxiety. At a hearing on February 6, 1984, Lancellotta testified that he suffered from dizziness, ringing in his ears, severe anxiety, fatigue, stomach distress, shortness of breath, and ventricular irregularity. He stated that his daily activities were extremely limited, that he feared going outdoors, and that he was incapable of driving. Also appearing at the hearing was a psychiatrist testifying as an impartial medical advisor, and a vocational expert. The medical advisor, Dr. Barron, testified that the reports of physicians who concluded Lancellotta was disabled were not supported by objective medical evidence and that Lancellotta did not suffer from any intellectual deficit or thought disorder. It was Dr. Barron's opinion that Lancellotta could perform non-stressful work activity. The vocational expert indicated that between 100,000 and 200,000 low-stress jobs exist in the national economy.

Lancellotta's sole contention on appeal is that the Secretary has failed to meet his burden of showing that Lancellotta is capable of performing any of the low-stress jobs that exist in the national economy. He notes that the testimony most significant to this appeal occurred in two short exchanges between the ALJ and the two expert witnesses. After Dr. Barron reviewed the medical evidence, the ALJ asked, "[W]ould it be correct to indicate that the medical record show[s] that the individual could do non-stressful work?," to which Dr. Barron answered "Yes." After Dr. Barron's testimony, the ALJ asked the vocational expert, Dr. Livneh, "How many jobs would you say there are ... that are sendentary ... and low stress in nature, as well?" Dr. Livneh answered, "I would say, at least, somewhere between 100 and 200,-000 positions—sedentary and low-stress."

In reaching a determination that "the claimant has been capable of performing low stressful work activity," the ALJ relied on Dr. Barron's testimony, the fact that Lancellotta's complaints and his treating physicians' reports do not establish any exertional impairment, and the fact that Lancellotta "actively pursued his claim, consulting several physicians, and answer[ing] questions clearly and coherently at the hearing." Because the vocational expert indicated that a significant number of low-stress jobs exist in the national economy, the ALJ found that Lancellotta was not disabled.

 We agree with Lancellotta that the ALJ's decision that jobs exist that he can do is not based on substantial evidence. Despite the finding that Lancellotta suffers from a severe mental impairment, and cannot perform his past jobs, the ALJ did not explain what differences exist between Lancellotta's prior work and the available "low-stress" jobs that would enable him to perform the latter when he cannot perform the former. The ALJ made no findings on the nature of Lancellotta's stress, the circumstances that trigger it, or how those factors affect his ability to work. Although the ALJ apparently relied upon Lancellotta's even demeanor at the disability hearing as evidence of his ability generally to work at low-stress jobs, we consider a claimant's ability to visit doctors and describe his medical problems coherently as insufficient evidence of his ability to work.

Lancellotta illuminates the problem with the ALJ's conclusions by accurately observing that stress is not a characteristic of a job, but instead reflects an individual's subjective response to a particular situation. Thus, even if most individuals would not find it particularly stressful to do the jobs listed in the ALJ's decision, we have no evidence showing that Lancellotta, who suffers from a severe mental impairment, would react the same way. Without an evaluation of Lancellotta's vocational abilities in light of his anxiety disorder, there is no basis for the ALJ's conclusion that he can perform low stress work.

The Secretary himself has recognized the need to examine an individual's specific vocational abilities when mental impairments are at issue:

"Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." Social Security Ruling 85–15.

*See also* Social Security Ruling 85–16 ("Consideration of these factors [ability to understand, carry out and remember instructions; respond appropriately to supervision, coworkers and customary work pressures] is required for the proper evaluation of the severity of mental impairments."); *Stokes v. Schweiker*, 729 F.2d 932, 935 (3d Cir.1984) (claimant found able to perform work "except employment 'involving high stress and significant interpersonal relations' "; remanded for consideration of vocationally relevant factors listed in SSR 85–16).

The ALJ here made no findings as to Lancellotta's ability to perform the basic work-related activities the Secretary has deemed critical to establish an individual's ability to work. Moreover, we note that the ALJ concluded that Lancellotta could perform low-stress jobs while even Dr. Barron testified only that he was capable of performing *non*-stressful work activity. In light of these deficiences, this case is remanded to the Secretary for an assessment of Lancellotta's vocational capabilities in light of his mental impairment.

*Vacated and remanded.*

LEVIN H. CAMPBELL, Chief Judge (concurring).

This opinion was not originally scheduled for publication. Since I had no objection to a remand, I joined in the panel's opinion without comment. Now that the panel, in response to requests from a number of practitioners, has agreed to publish its opinion, I add this short concurrence. I do so in order to emphasize that our decision in no way represents a departure from the longstanding recognition that Congress has assigned the Secretary the prime responsibility for factual analysis in social security disability cases. *See, e.g., Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981).

Indeed, our decision merely follows applicable Social Security Rulings. In addition to the language from Social Security Rulings 85–15 and 85–16 quoted in the panel's opinion, Ruling 85–15 also states as follows:

> *Stress and Mental Illness....* Determining whether [mentally impaired] individuals will be able to adapt to the demands or "stress" of the workplace is often extremely difficult. This section is ... intended ... to emphasize the importance of thoroughness in evaluation on an individualized basis.

> . . . .

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

*West's Social Security Reporting Service, Rulings,* at 421 (Supp.1986). In this case, by contrast, the Secretary relied on medical evidence that Lancellotta could perform "non-stressful" work, and on vocational evidence that there exist in the economy a significant number of jobs that ordinarily would be considered "low-stress." In other words, the Secretary ascertained only that there are a significant number of jobs in the economy that would be low in stress for the average worker. This approach falls short. Ruling 85–15 recognizes the Secretary's obligation to undertake at least some subjective, individualized inquiry into what job attributes are likely to produce disabling stress in the claimant, and what, if any, jobs exist in the economy that do not possess these attributes. Not having identified the conditions that are likely to cause disabling stress in Lancellotta, the ALJ in the instant case failed to elicit from the vocational expert any testimony directed specifically to these particular stress-causing conditions. *Cf. Arocho v. Secretary of Health and Human Services,* 670 F.2d 374 (1st Cir.1982) (ALJ's hypothetical question to vocational expert inadequately conveyed precise nature of claimant's limitations).[1] It is well settled, furthermore, that a remand to the Secretary is appropriate where the Secretary has failed to follow a policy set out in an applicable ruling. *See McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118 (1st Cir. 1986); *Andrades v. Secretary of Health and Human Services,* 790 F.2d 168 (1st Cir.1986); *Munoz v. Secretary of Health and Human Services,* 788 F.2d 822 (1st Cir.1986).

Accordingly, our decision cannot in any way be read to presage a greater willingness to examine on appeal the factual bases of the Secretary's determinations. This court will not interfere with the Secretary's assessment of the quality of factual evidence. The Secretary enjoys wide latitude in the case-by-case implementation of the Act. We merely hold the Secretary to his own Rulings.

I do not feel that adherence to this aspect of Ruling 85–15 will impose any great burden on the Secretary in future cases. He need only produce some evidence of the individualized nature of a claimant's stress reactions, and elicit testimony about jobs in the economy that such a claimant could perform. And, of course, this inquiry is unnecessary unless the Secretary first determines that a claimant has a severe impairment or impairments that prevent return to his former work, and has a stress condition that significantly affects his ability to perform the full range of jobs consistent with any exertional or other limitations. *See Perez Lugo v. Secretary of Health and Human Services,* 794 F.2d 14, 17 (1st Cir.1986); *Borrero Lebron v. Secretary of Health and Human Services,* 747 F.2d 818 (1st Cir.1984).

---

1. I also note the inconsistency between the Secretary's finding of no disability at step 5 and his finding that Lancellotta could not return to his former work as an assembler. The Secretary found claimant not disabled based on generalized testimony that he can perform low-stress jobs and that low-stress jobs exist in significant numbers. Yet the vocational expert characterized claimant's former assembler job, which the Secretary implicitly found too stressful, to be a low-stress job. This inconsistency illustrates the need for a more individualized assessment of claimant's condition.