Follensbee v. HHS                    CV-94-177-JD   03/28/95

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Elizabeth Follensbee

    v.                                          Civil No. 94-177-JD

Secretary, Health and Human
Services


O R D E R


The plaintiff, Elizabeth Follensbee, brings this action pursuant to § 205(g) of the Social Security Act ("Act"), 42 U.S.C.A. § 405(g), seeking review of a final decision of the defendant, Secretary of Health and Human Services ("Secretary"), denying her claim for a period of disability and disability insurance benefits under the Act.  Before the court are the plaintiff's motion to reverse the decision of the Secretary (document no. 5) and the defendant's motion to affirm the decision of the Secretary (document no. 10).


Background

The plaintiff, born on October 7, 1947, was forty-five years old when the Secretary conducted the administrative hearing. Transcript of Administrative Record ("Tr.") at 40.  The plaintiff has completed high school. Id. at 5.  Her vocational history includes employment as a seamstress, shirt presser, newspaper

inserter, and a bearings inspector in a factory.  Id. at 42-45. The plaintiff has not worked since January 1991 due to Meniere's Syndrome.  Id. at 45.[1]

I.   Medical Evidence[2]

The plaintiff was examined in December 1988 and January 1989 by Dr. Glenn Johnson, an otolaryngologist affiliated with the Dartmouth-Hitchcock Medical Center.  Tr. at 120-21.  She complained of vertigo, ear pain and tinnitus.  Id.  Dr. Johnson diagnosed right-sided atypical Meniere's disease and recommended corrective surgery known as a vestibular nerve section.  Id. at 121.   The surgery was performed in February 1989 and, in a March 2, 1989, medical note Dr. Johnson reported that the plaintiff only suffered unsteadiness when tired.  Id. at 127.

On September 26, 1989, the plaintiff was examined by Dr. J. Oliver Donegan, another physician associated with the Dartmouth-Hitchcock Medical Center.  Tr. at 128.  She complained of lightheadedness and some altered sensation on the right side of

_____

[1]Meniere's disease is hearing loss, tinnitus, and vertigo resulting from nonsuppurative disease of the labyrinth with distention of the membranes labyrinth.  Stipulation of Facts at n.1 (quoting Dorland's Medical Dictionary, 26th ed. (1981) at 795).

[2]The plaintiff's medical history is drawn largely from the stipulation of facts filed jointly by the parties.

2

her face.  Id. at 128.  Dr. Donegan noted in the medical record that, upon examination, the plaintiff appeared stable and that he could not determine the etiology of her symptoms.  Id. at 128.

On July 30, 1990, the plaintiff was examined by Dr. Johnson.  Tr. at 130.  She complained of pain in the area of the craniectomy, aggravated by her head-bent position as an inspector.  Id.  Dr. Johnson noted in the medical record that the plaintiff's balance is "doing great" and that the surgical wound had healed but was still tender.  Id.

On September 4, 1990, the plaintiff's ovaries were surgically removed due to pelvic pain caused by adhesions.  Tr. at 132-34.

On December 6, 1990, the plaintiff was examined by Dr. Johnson.  Tr. at 134.  She complained of fluid retention and increasing difficulties with imbalance.  Id.  Dr. Johnson prescribed physical therapy, a restricted diet and medication (Dyazide).  Id.

On March 5, 1991, the plaintiff was examined by Dr. Johnson.  Tr. at 135.  She complained of increased lethargy and near constant unsteadiness aggravated by motion.  Id.  Dr. Johnson recommended central auditory studies.  Id.

Auditory testing was performed in March 1991 and revealed a slight decrease in the plaintiff's hearing.  Tr. at 136.  The

3

results showed a decrease in pattern performance which requires intact hemispheric and interhemispheric pathways. Id. The auditory brainstem response test was normal. Id. The audiologist recommended a repeat audiogram including bone conduction. Id.

An MR scan of the plaintiff's head was performed in April 1991. Tr. at 137. The scan was normal and did not reveal evidence of either an acoustic neuroma or a demyelinating disorder. Id.

On June 11, 1991, the plaintiff was examined by Dr. Johnson. Tr. at 139. She complained of unsteadiness. Id. Dr. Johnson noted in the medical record that the plaintiff was participating in physical therapy. Id. On the same day, the plaintiff underwent additional audiological testing, the results of which were borderline normal. Id. at 140. The audiologist noted in the medical record that although the testing did not reveal "any strong suggestion" of central involvement, a "very slight problem" could not be ruled out. Id.

On March 5, 1992, Dr. Margo Krasnoff, a physician associated with the Hitchcock Clinic, examined the plaintiff. Tr. at 144. Dr. Krasnoff diagnosed the plaintiff with gallstones and, in April 1992, the plaintiff's gallbladder was surgically removed. Id. at 144-46, 152.

4

On July 6, 1992, the plaintiff was examined at the Dartmouth-Hitchcock Medical Center after complaining of lower back pain on her left side. Tr. at 147. Her x-rays were considered normal and a CT scan revealed a bulging disc at L5-S1 with a lateral herniated disc of the left L4-L5 interspace. Id. 147-49.

In an October 13, 1992, letter Dr. Johnson wrote that the plaintiff experienced periods of motion-related vertigo, nausea. and unsteadiness. Tr. at 150-51. Dr. Johnson noted that the plaintiff's unemployment benefits had run out and that she could resume work under certain restrictions. Id. at 151. Specifically, Dr. Johnson wrote that

> [b]ecause of her problems with instability and motion intolerance, she should not be working in an area where she needs to be climbing ladders, working on scaffolding, or working around moving parts . . . she should not be in a situation where she is frequently exposed to a lot of visual movement . . . .[S]he would need to be able to get to work and home from work without having to drive in the dark. Fatigue also plays a role in her performance, and an ideal job would allow her some flexibility in taking breaks to help minimize the fatigue factor.

Id. at 150. Dr. Johnson added that it would be beneficial for the plaintiff to have steady employment. Id.

On October 14, 1992, Dr. Krasnoff summarized the plaintiff's condition in the medical record. Tr. at 152-53. Dr. Krasnoff noted that the plaintiff's condition had improved and that the

5

Meniere's disease was under fairly good control. Id. at 152. A complete medical exam revealed the plaintiff's condition to be essentially normal. Id. at 152. In a November 11, 1992, letter written at the plaintiff's request, Dr. Krasnoff agreed with Dr. Johnson's assessment of the plaintiff's vocational restrictions by essentially adopting the recommendations in Dr. Johnson's letter of October 13, 1992. Id. at 155.

On January 7, 1993, a state agency physician reviewed the plaintiff's medical records and evaluated her residual functional capacity. Tr. 77-84. The physician concluded that the plaintiff should not climb ramps, stairs, ladders, ropes or scaffolds but did not require any other postural limitations. Id. at 79. On March 25, 1993, a second state physician reviewed the evidence and affirmed the residual functional capacity evaluation.

## II.  Claimant Questionnaire

On December 8, 1992, the plaintiff completed a questionnaire describing her daily routine. Tr. 105-108. On an average day she reads, does crafts and needlework, prepares meals with her husband and washes laundry and dishes. Id. at 106. She goes shopping with her husband for groceries and other items when the stores are not busy. Id. at 105. The plaintiff reads, listens to the radio and watches television programs that do not depict

6

"alot [sic] of visual movement." Id. at 106. She drives during daylight hours, visits friends or family about once a week to talk and generally gets out of the house three or four times each week. Id. The plaintiff suffers from stress, which amplifies her difficulty with dizziness, balance and concentration. Id. at 107. She dropped out of vocational school because of stress-induced dizziness and imbalance, id. at 108, and encounters difficulty completing tasks when tired. Id. at 107. The plaintiff wrote that she cannot tolerate environments that are noisy or include excessive visual movement. Id. at 107-08.

III. Procedural History

The plaintiff filed the current application for a period of disability and for disability insurance on November 20, 1992, claiming an inability to work since January 9, 1991. Tr. at 75. The application was denied initially, id. at 85, and following reconsideration by the Social Security Administration. Id. at 91-93. An administrative law judge ("ALJ"), before whom the plaintiff, her attorney, her husband, and a vocational expert ("VE") appeared, considered the matter de novo and on October 28, 1993, ruled that the plaintiff was not entitled to the requested benefits. Id. at 17-25. The Appeals Council denied the

7

plaintiff's request for review on March 11, 1994, rendering the ALJ's decision the final decision of the Secretary. Id. at 3-4.

At the administrative hearing, the plaintiff further described her personal history, vocational experience, medical history, symptomatology, daily activities and physical capabilities. She elaborated on comments made on the questionnaire, noting that she is most likely to experience dizziness and vertigo after observing moving objects which turn. Tr. at 46. The plaintiff also testified that her condition is not treated by medication, id. at 48, and is exacerbated by stressful situations, such as a fight with a family member. Id. at 49, 54-56. In response to questions posed by her attorney, she indicated that she has trouble sleeping and often takes naps, has difficulty concentrating and sometimes is forgetful. Id. at 56-57. The plaintiff testified that, aside from these complaints, she generally is in good health. Id. at 47.

The ALJ also heard testimony from Richard Phillips, a private rehabilitation consultant who appeared as an impartial vocational expert ("VE"). Based on information provided by the Secretary on the plaintiff's vocational history, Phillips reported that the plaintiff's prior jobs are considered "low end semi-skilled" or unskilled in nature, and involve exertional levels ranging from light to medium. Id. at 60.

8

Phillips also testified in response to a hypothetical question posed by the ALJ in which he was to assume a forty-five year old claimant with the plaintiff's education and work experience and a functional capacity for sedentary work reduced by a need for "[f]lexible hours and flexibility in taking breaks to help minimize the fatigue factor." Id. at 60-61. He was to further assume the hypothetical claimant could not be "frequently exposed to a lot of visual movement" and "should not be at a job that requires the climbing of ladders, working on scaffolding and working around moving parts." Id. at 61. Phillips responded that an individual with the capabilities of the hypothetical claimant would be incapable of performing any of the plaintiff's prior jobs. Id. The following colloquy took place:

ALJ:    Would she have any transferable skills? Any sedentary job that would allow for these restrictions?

VE:    No, sir.

ALJ:    How about unskilled sedentary job? [sic]

VE:    Your Honor, I honestly can't identify a sedentary position which does not involve at least a significant amount of visual stimulus.

ALJ:    Um-hum.

VE:    I think any job that's sedentary is going to require use of the eyes such as assembly or cashier work. There'd be people coming and going. Receptionist, possibly. You'd be in

9

an office environment where there'd be people going back and forth.

Id. at 61-62. The ALJ next commented that one of the plaintiff's physicians, Dr. Krasnoff, cautioned against "frequent" exposure to a lot of visual movement. Id. at 62. The ALJ then re-examined the plaintiff, who testified that she did not experience discomfort while sitting in the hearing room but "cannot be in a crowded situation." Id. at 62. The following colloquy ensued:

ALJ:       Does that help you, Mr. Phillips?

VE:        Well, let me -- I can speak to the issue of frequent. The definition of that is 66 percent of the time or greater with reference to a particular job.

ALJ:       Um-hum.

VE:        I can say that receptionist job comes in below that. You need occasional, [sic] all the visual requirements of receptionist work in the sedentary range are classified as occasional which is 33 percent of the time. So based on that alone, a very technical definition, I would say the reception work could be possible. I'm not able to identify any other sedentary positions.

Id. at 62-63. Likewise, Phillips testified later in the hearing that he doesn't "consider receptionist work, sedentary work, as requiring or as being exposed to a lot of visual movement." Id. at 66. Phillips testified that there are 830,000 such receptionist jobs in the national economy with 850 in New Hampshire. Id. at 63.

The plaintiff's attorney also questioned the VE about the hypothetical claimant's ability to work as a receptionist given the need for flexibility in taking breaks due to fatigue. Id. at 67.

```
ATTY:      Again, I'm just referring to the hypothet-
           ical.  I assume a break from, from the work
           task.  If it's a receptionist, that would be
           a break from answering the telephone, I
           guess.

VE:        If posed that way, I think if a person were
           away from the task, then that generally
           precludes employment if it happens more than
           once or twice a day.

                        * * * *

VE:        It would depend on how often it happened.
           You know, there's a certain amount of
           flexibility there.  If it were for longer
           than five or 10 minutes and happened more
           than, say, you know, twice in the morning and
           once in the afternoon or three times
           throughout the course of the day, I think
           then it would become problematic and most
           employers would have a hard time tolerating
           it.
```

Id. at 67-68.

The ALJ applied the five-step sequential process applicable to a claimant's disability application. 20 C.F.R. §§ 404.1520, 416.920 (1994).[3] The ALJ found (1) the plaintiff has not engaged

---

[3]The ALJ is required to consider the following five steps when determining if a claimant is disabled:
(1) whether the claimant presently is engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment:

11

in substantial gainful activity since January 9, 1991; (2) the medical evidence establishes that the plaintiff has severe meniere disease; (3) the plaintiff does not suffer from an impairment or combination of impairments listed in Appendix 1, Subpart P, Regulations No. 4; (4) the impairment prevents the plaintiff from performing her past relevant work; and (5) there are a significant number of jobs in the national economy which the plaintiff could perform, notwithstanding her impairment. Id. at 23-24. The ALJ found that the plaintiff's residual functional capacity ("RFC") would allow her to

> perform the nonexertional requirements of work for jobs that would not require frequent exposure to visual movement, climbing ladders or scaffolding or be around moving objects due to her unsteadiness or work that would not allow the flexibility to take breaks to relieve her pain. There are no exertional limitations.

Id. at 23.

In addition, the ALJ found the plaintiff's claim that vertigo and unsteadiness prevent her from working at any job not to be credible because it was clearly unsupported by the clinical findings. Id. at 21, 23. The ALJ further concluded that the plaintiff's complaints of disability are contradicted by her

---

> (3) whether the impairment meets or equals a listed impairment;
> (4) whether the impairment prevents the claimant from performing past relevant work;
> (5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.

12

ability to perform her daily routine and by the fact that her collection of unemployment benefits through November 1992 indicated that she "felt she had the ability to return to employment." Id. at 21-22. Based on these findings, the ALJ determined that the plaintiff was not under a "disability" as defined by the Act at any time through the date of decision. Id. at 24.

The plaintiff filed this action on April 7, 1994, seeking a reversal of the Secretary's decision.

## Discussion

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In reviewing a Social Security disability decision, the factual findings of the Secretary "shall be conclusive if supported by `substantial evidence.'" Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)).[4]  The court "`must uphold the Secretary's

---

[4]Substantial evidence is "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "This is something less than the weight of the

13

findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Secretary's] conclusion.'"  Id. (quoting Rodriguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)); accord Richardson, 402 U.S. at 401.  The record must be viewed as a whole to determine whether the decision is supported by substantial evidence.  Frustaglia v. Secretary of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Rodriguez, 647 F.2d at 222.  Moreover, "[i]t is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." Irlanda Ortiz, 955 F.2d at 769 (citing Rodriguez, 647 F.2d at 222); see also Burgos Lopez v. Secretary of Health and Human Servs., 747 F.2d 37, 40 (1st Cir. 1984).  The ALJ must also consider the plaintiff's subjective complaints of pain if he has "a clinically determinable medical impairment that can reasonably be expected to produce the pain alleged."  42 U.S.C. §

---

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

423(d)(5)(A); <u>Avery v. Secretary of Health and Human Servs.</u>, 797 F.2d 19, 21 (1st Cir. 1986); 20 C.F.R. § 404.1529.

In her motion, the plaintiff raises several arguments to support her contention that the Secretary's denial of benefits was incorrect. The defendant responds that its decision should be affirmed as the record contains substantial evidence to support its denial of benefits. The court addresses the arguments <u>seriatim.</u>

The plaintiff first asserts that the ALJ erred in his finding that she can work as a receptionist, a semi-skilled job, because the VE did not identify transferable skills "nor had the issue of transferable skills been discussed at her hearing." Plaintiff's Motion at ¶ 3. The argument fails because the record contains uncontroverted evidence of the plaintiff's education, a legitimate "vocational factor" under the regulations. <u>See</u> 20 C.F.R. § 404.1564. The plaintiff testified that she has completed high school, Tr. at 41-42, and the ALJ explicitly asked the VE to consider this level of educational experience in the context of the hypothetical question. Tr. 61-61.

The plaintiff next asserts that her "non-exertional impairments" have reduced her functioning level and preclude the performance of the full range of sedentary work. Plaintiff's Motion at ¶ 4. The court finds that the ALJ recognized the non-

15

exertional impairments and explicitly instructed the VE to consider the fatigue and visual movement limitations. Tr. at 61. The court finds it irrelevant that the plaintiff may be unable to perform the "full range" of all sedentary jobs given the VE's conclusion that a hypothetical claimant with the plaintiff's limitations can work as a receptionist, a sedentary job which exists in significant numbers in the economy.

The plaintiff next asserts that the "ALJ did not follow the treating physician's recommendation that [she] only could perform a greatly restricted range of sedentary work at her home . . . ." Plaintiff's Motion at ¶ 5. The plaintiff further asserts that the ALJ did not include the restrictions suggested by Dr. Johnson in the hypothetical question considered by the VE and that the ALJ "minimized her treating source reports (e.g. Dr. Johnson)." Id. at ¶¶ 5, 10.

The plaintiff's argument is unavailing as it rests on an incorrect statement of the law and, in any event, misrepresents the substance of the administrative record. The ALJ enjoys wide discretion and considers a host of factors when evaluating a claimant's medical condition. See 20 C.F.R. § 404.1527. The First Circuit has made clear that the ALJ is neither required to accept the conclusions of any particular physician nor give greater weight to conclusions advanced by treating physicians.

16

Arroyo v. Secretary of Health and Human Servs., 932 F.2d 82, 89 (1st Cir. 1991) (quoting Tremblay v. Secretary of Health and Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)); Keating v. Secretary of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988) (quoting Barrientos v. Secretary of Health and Human Servs., 820 F.2d 1, 2-3 (1st. Cir. 1987)).  Provided that the Secretary's decision is supported by substantial evidence, the failure to rely on the opinion of a treating physician is not an appropriate grounds upon which the court may reverse.  See Irlanda Ortiz, 955 F.2d at 769; Arroyo, 932 F.2d at 89.

In this case, the ALJ did consider the opinions of the plaintiff's treating physicians and even incorporated verbatim Dr. Johnson's recommendation that the plaintiff should not "be climbing ladders, working on scaffolding, or working around moving parts" into a hypothetical question posed to the VE. Compare Tr. at 60-63 (hypothetical question) with Tr. at 150 (text of Dr. Johnson's recommendation).  The court finds that the ALJ did not commit reversible error in his evaluation of the medical record.

The plaintiff next asserts that the VE's testimony that a hypothetical claimant with the plaintiff's abilities could work as a receptionist was "equivocal at best . . . since he could not identify a sedentary position 'which does not involve at least a

17

significant amount of visual stimulus.'" Plaintiff's Motion at ¶ 6 (citing Tr. at 61). However, the court notes that after further questioning by the ALJ and additional testimony from the plaintiff, the VE did conclude that a hypothetical claimant with the plaintiff's intolerance of frequent visual movement could work as a receptionist. Tr. 62-63.

The court notes that the VE's testimony arguably lends itself to more than one interpretation. However, the existence of equivocal testimony does not constite reversible error under the substantial evidence standard of review. A "reasonable mind, reviewing the evidence in the record as a whole, could accept [the VE's testimony] as adequate" to support the finding that the plaintiff is capable of receptionist work notwithstanding her difficulty with frequent visual stimulus. See Irlanda Ortiz, 955 F.2d at 769. The fact that another reasonable mind could arrive at a contrary interpretation of the VE's testimony is not grounds for reversal as it is the ALJ's responsibility to resolve conflicts in the evidence. See Irlanda Ortiz, 922 F.2d at 769.

The plaintiff next asserts that the VE "relied on the technical definition of receptionist and how much movement one could anticipate, it was significantly less than his testimony based on experience, an element the . . . regulations require when they are faced with difficult and complex placement and

18

suitability issues on identifying work . . ."  Plaintiff's Motion at ¶ 7 (citing 20 C.F.R. § 404.1566(e)) (emphasis supplied).

The argument fails because it is not supported by the cited authority.  The cited subsection of the federal regulations provides:

> If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we _may_ use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.

20 C.F.R. § 404.1566(e) (emphasis supplied).  Contrary to the plaintiff's assertion, the regulation does not require the ALJ to solicit testimony from a VE, even though this may be a common practice.  See _id._  Moreover, the regulation does not distinguish between "technical" knowledge and "experience" as a basis for a VE's opinion, should the Secretary elect to call a VE to testify. See _id._

The plaintiff next asserts that the ALJ did not properly take into account the plaintiff's "significant sit and stand intolerance" as described by Dr. Johnson in his July 1992 note and by Dr. Krasnoff in her October 14, 1992, note.  Plaintiff's Motion at ¶ 8.

The stipulation of facts filed jointly by the Secretary and the plaintiff does not note a significant sit and stand

19

intolerance. See Stipulation of Facts. Likewise, neither Dr. Johnson's correspondence of October 13, 1992, nor Dr. Krasnoff's correspondence of November 11, 1992, mention a sit and stand intolerance, although both letters purport to describe the plaintiff's workplace restrictions and do, in fact, list several other physical limitations. Finally, neither of the physicians who undertook a residual functional capacity evaluation on behalf of the state have suggested that the plaintiff suffered from this additional physical limitation. The Secretary's findings are supported by the medical record as a whole as stipulated by the parties notwithstanding the ALJ's alleged failure to consider the scantly documented sit and stand limitations. See Frustaglia, 829 F.2d at 195.

The plaintiff next asserts that the ALJ failed to properly consider a variety of subjective complaints, including those of fatigue and dizziness, the "effect of passive and active motion around her," "day long unpredictable dizziness and fatigue attacks," and "the effect of stress on her symptoms." Plaintiff's Motion at ¶¶ 9-12, 14.

The ALJ is required to consider the subjective complaints of pain or other symptoms by a claimant who presents a "clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." 42 U.S.C. § 423(d)(5)(A); Avery,

20

797 F.2d at 21; 20 C.F.R. § 404.1529. "[C]omplaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989); see Bianchi v. Secretary of Health and Human Servs., 764 F.2d 44, 45 (1st Cir. 1985) ("The Secretary is not required to take the claimant's assertions of pain at face value.") (quoting Burgos Lopez v. Secretary of Health and Human Servs., 747 F.2d 37, 40 (1st Cir. 1984)). Once a medically determinable impairment is documented, the effects of pain must be considered at each step of the sequential evaluation process. 20 C.F.R. § 404.1529(d). A claimant's medical history and the objective medical evidence are considered reliable indicators from which the ALJ may draw reasonable conclusions regarding the intensity and persistence of the claimant's pain. Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3). However, situations exist in which the reported symptoms of pain suggest greater functional restrictions than can be demonstrated by the medical evidence alone. Id.

When a claimant complains that pain or other subjective symptoms are a significant factor limiting her ability to work, and those complaints are not fully supported by medical evidence contained in the record, the ALJ must undertake further exploration of other information. Avery, 797 F.2d at 23. The

21

ALJ must consider the claimants's prior work record; daily activities; location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medication taken to alleviate pain or other symptoms, past or present; treatment, other than medication, received for relief of pain or other symptoms, past or present; any measures used, past or present, to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain. 20 C.F.R. § 404.1529(c)(3); Avery, 797 F.2d at 23; SSR 88-13. Moreover, when assessing credibility the ALJ may draw an inference that the claimant would have sought additional treatment if the pain was as intense as alleged. See Irlanda Ortiz, 955 F.2d at 769. If the complaints of pain are found to be credible under the criteria, the pain will be determined to diminish the claimant's capacity to work. 42 U.S.C. § 423(d); 20 C.F.R. § 404.1529(c)(4). Finally, the court gives deference to credibility determinations made by the ALJ, particularly where the determinations are supported by specific findings. Frustaglia, 829 F.2d at 195 (citing DaRosa v. Secretary of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1985)).

The ALJ announced findings of fact which support his conclusion that the plaintiff's subjective complaints were not

credible. First, the plaintiff's treating physicians have released her to work with certain restrictions, each of which was posed to the VE in the form of a hypothetical question. See Tr. at 21-22. Second, the plaintiff's complaints of visual limitations associated with watching television or viewing spinning objects were also considered by the VE. Id. Third, the ALJ found that the plaintiff's daily activities, as reported on the claimant questionnaire and described at the administrative hearing, "belie her complaints of disability." Id. at 22.[5]

_____

[5]The plaintiff argues that Lancellotta v. Secretary of Health and Human Servs., 806 F.2d 284 (1st Cir. 1986), requires the ALJ to include her subjective complaints of stress in a hypothetical question to the VE. Plaintiff's Motion at ¶ 14. The argument is unavailing. In Lancellotta the ALJ, while acknowledging a severe mental impairment, did not make findings concerning the nature of the claimant's stress and its potential vocational impact even though the record contained medical reports detailing a variety of ailments, including anxiety and depression. 806 F.2d at 285. The First Circuit vacated and remanded. Id. at 286. In contrast, the plaintiff in this case has presented no medical evidence of a mental, anxiety or stress disorder beyond the subjective complaints such as those described in her questionnaire and in the following colloquy:

> Claimant: When I get stressed out and dizzy, I cannot sleep.
> ALJ:      Stressed out, you say?
> Claimant: Yeah.
> ALJ:      What makes people -- what makes you stressed out? Do you know?
> Claimant: Normal life, Il [sic] guess.

Tr. at 48-49; see Stipulation of Facts (no mention of stress or related disorder other than comment that "plaintiff noted that her balance and dizziness bother her when she gets stressed . . ."). The plaintiff has not advanced authority for her

23

The ALJ considered the <u>Avery</u> factors and, in so doing, made credibility determinations based on specific findings supported by the record.  The ALJ also had the opportunity to observe the plaintiff's demeanor at the hearing and was entitled to draw inferences based on those observations.  Given the deferential standard of review, the court concludes that the specific findings along with the overall record in this case demonstrate that the ALJ's conclusion that the subjective complaints were not credible is supported by substantial evidence.

As her final grounds for reversal, the plaintiff asserts that the ALJ improperly considered her prior receipt of unemployment benefits when assessing her credibility.  Plaintiff's Motion at ¶ 13 (citing <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1066 (6th Cir. 1983) (dissenting opinion); <u>Flores v. Secretary of Health, Educ. and Welfare</u>, 465 F. Supp. 317 (S.D.N.Y. 1978)).  The plaintiff objects to the ALJ's finding that "[i]n addition, the claimant testified at the hearing that she collected unemployment benefits through November, 1992 which would indicate

---

proposition that subjective complaints of stress of this nature, where unsupported by the medical record, must be adopted by the ALJ or presented as a limitation to the VE in a hypothetical question.  The court finds that the ALJ's failure to place weight to such subjective complaints does not constitute reversible error.

24

that the claimant felt she had the ability to return to employment." Tr. at 22.

The First Circuit has addressed this issue:

> [Plaintiff] also criticizes the Secretary for considering the fact that he collected unemployment benefits . . . while allegedly disabled. . . . In his opinion, the ALJ said the fact that [the plaintiff] collected unemployment benefits indicated [the plaintiff] was "ostensibly ready, willing, and able to work." It is not clear that the ALJ saw [the plaintiff]'s collection of unemployment benefits as positive evidence he could work; it may be that the ALJ thought the evidence affected [the plaintiff]'s credibility. In any event, although we have reservations about the significance of such evidence, we are reluctant to say that a claimant's decision to hold himself out as able to work for the purpose of receiving unemployment benefits may never be considered on the issue of disability. At least where there was medical and vocational evidence supporting the denial of benefits and claimant's receipt of unemployment benefits does not appear to have been the decisive factor in the denial of benefits, we are not inclined to overturn the Secretary's decision.

Perez v. Secretary of Health, Educ. and Welfare, 622 F.2d 1, 3 (1st Cir. 1980) (citations omitted). The First Circuit also distinguished Flores, a case upon which the instant plaintiff relies, because that decision involved a situation where the "ALJ relied almost exclusively on claimant's receipt of unemployment benefits." Id.

The ALJ's findings relative to the prior receipt of unemployment benefits were plainly made in the context of his assessment of the plaintiff's credibility. See Tr. at 22.

25

Moreover, the record contains a variety of vocational and medical evidence supporting the Secretary's denial of benefits and, thus, the receipt of unemployment benefits cannot be considered a "decisive factor" in the ALJ's ruling. See Perez, 622 F.2d at 3. The court finds that the incidental reliance of the receipt of unemployment benefits to have been proper in the context of the ALJ's credibility determination.

Conclusion

Based on the foregoing analysis, the court finds that the Secretary did not commit reversible error as alleged by the plaintiff. The defendant's motion to affirm the decision of the Secretary (document no. 10) is granted. The plaintiff's motion to reverse the decision (document no. 5) is denied. This order resolves the underlying dispute between the parties and the clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

March 27, 1995

cc:  Raymond J. Kelly, Esquire
     David L. Broderick, Esquire