Nickerson v. SSA                    CV-03-391-PB   02/24/05

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

**George Nickerson**

        **v.**                                    Civil No. 03-391-PB
                                                  2005 DNH 031
**Jo Anne B. Barnhart, Commissioner,
Social Security Administration**

**MEMORANDUM AND ORDER**

Pursuant to 42 U.S.C. § 405(g), George Nickerson moves to reverse the Commissioner of Social Security's decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). The Commissioner objects, and moves for an order affirming her decision. For the reasons set forth below, I reverse the Commissioner's decision in part, affirm in part, and remand this case for further proceedings consistent with this Memorandum and Order.

**I.   BACKGROUND**

**A.   Procedural History**

Nickerson has applied for disability insurance benefits on at least two occasions prior to his most recent application. His

first application was filed on April 7, 1993.  Transcript of Record ("Tr.") 93-96.  This application was denied on procedural grounds.  His second application was filed on June 2, 1993.  Tr. 102-105.  Because both applications alleged April 22, 1992 as the initial onset date, the Administrative Law Judge ("ALJ"), Ruth Kleinfeld, reopened the first application and consolidated the facts of that application with those of the second.  After holding a hearing, the ALJ issued a decision on April 26, 1995 finding that Nickerson was not disabled under the Act.  Tr. 303.

On September 11, 1997, Nickerson filed a third disability insurance benefits application.  This time, he alleged July 1, 1992 as the date of onset.  Tr. 349-351.  His case was handled by ALJ Robert Klingebield.  As an initial matter, Klingebield declined to reopen Nickerson's previous disability insurance application, concluding that ALJ Kleinfeld's April 26, 1995 decision was final and binding.  Tr. 16.  Klingebield further determined that administrative finality, or *res judicata*, precluded him from considering "issues" disposed of in the earlier decision.  Id.  The parties construe this to mean that evidence concerning Nickerson's status between July 1, 1992, the designated date of initial onset in the prior application, and

2

April 26, 1995, the date the decision was rendered by the ALJ in that case, was ignored by the ALJ in the course of reaching his determination. From the record, it appears as if the parties' characterization is correct.

After reviewing the remaining evidence, the ALJ employed the mandatory five-step sequential evaluation process to reach a conclusion about Nickerson's status.[1] The ALJ found that although Nickerson suffered from a severe impairment, because he had the ability to perform low-stress jobs and lift light weight, he was not prevented from doing all types of work available in the national economy. Tr. 23, Finding Nos. 6-11. The ALJ based this decision on his assessment of Nickerson's residual functional capacity. Id., Finding No. 4. According to the ALJ, Nickerson could not "carry more than 20 pounds or more than ten pounds on a regular basis and he was restricted to low stress jobs and to performing only routine job tasks." Otherwise, the

---

[1] That evaluation requires the SSA to determine: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

3

ALJ concluded that Nickerson was able to function proficiently in the job market. Id. As a result, the ALJ concluded that Nickerson was not disabled within the meaning of the Act, and denied him benefits. Id., Finding No. 12.

**B.    Stipulated Facts**

Pursuant to Local Rule 9.1(d), the parties have submitted a Joint Statement of Material Facts which are part of the court's record (Doc. No. 8). The facts relevant to this Memorandum and Order are discussed as appropriate.

## II.    STANDARD OF REVIEW

**A.    Properly Supported Findings Entitled to Deference**

The parties now seek review of the Commissioner's findings. After a final decision by the Commissioner denying a claimant's application for benefits, and upon a claimant's timely request, a district court is authorized to review the administrative record and enter a judgment affirming, modifying, or reversing the Commissioner's decision. See 42 U.S.C. § 405(g). The court's review, however, is limited in scope. It must accede to the Commissioner's factual findings if they are supported by

4

substantial evidence. See id.; Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner is responsible for making credibility determinations, drawing inferences from the evidence, and resolving evidentiary conflict. Irlanda Ortiz, 955 F.2d at 769; Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987). Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'" Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)); see also, Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

The ALJ's findings of fact are not conclusive, however, if they are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citations omitted). If the Commissioner has misapplied the law or has failed to provide a fair hearing, deference to the Commissioner's decision is not

5

appropriate, and remand for further development of the record may be necessary.  See Carroll v. Sec'y of HHS, 705 F.2d 638, 644 (2d Cir. 1983); see also, Slessinger v. Sec'y of HHS, 835 F.2d 937, 939 (1st Cir. 1987) ("The [Commissioner's] conclusions of law are reviewable by this court.").

B.  **Parties' Respective Burdens**

An individual seeking Social Security disability benefits is disabled within the meaning of the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can reasonably be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The claimant has the initial burden to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Sec'y of HHS, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that her impairment prevents her from performing her previous type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Sec'y of HHS, 690 F.2d 5, 7 (1st Cir. 1982)).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant and other witnesses; and (3) the claimant's educational background, age, and work experience.  Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986)).  As in this case, the Commissioner applies a five-step sequential evaluation process to determine whether a claimant is disabled.  Where a claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See Vazquez v. Sec'y of HHS, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows that considering the claimant's age, education, work experience, and impairment there are jobs that the claimant can perform, the overall burden to demonstrate disability remains with the claimant.  Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

I review the claimant's challenge to the Commissioner's determination with these principles in mind.

7

## III. DISCUSSION

## A. Did the ALJ Err in Failing to Consider Evidence also Considered in Nickerson's Prior Applications?

Nickerson first argues that ALJ Klingebiel erred in assessing his residual functional capacity. He claims that the error lies in the ALJ's refusal to consider the findings and opinions of Drs. Robert Thies, Jonathan Sobel, and William Davison. I agree with Nickerson that the ALJ's refusal was in error. I therefore remand this case to the ALJ with instructions to include any evidence of disability that these witnesses provided.

Drs. Theis, Sobel, and Davison all treated Nickerson prior to April 26, 1995, the date upon which ALJ Kleinfeld issued her opinion regarding Nickerson's first disability insurance benefits application. Deeming the findings with respect to Nickerson's status final and therefore protected by *res judicata*, ALJ Klingebield limited the scope of his inquiry to Nickerson's status between April 26, 1995 and March 17, 1998, the date upon which his insurance status expired. Tr. 16; <u>see also</u> Tr. 17-18 (stating that "the only medical evidence of treatment for a back problem existing in the record after April 26, 1995 are Veteran's

8

Administration hospital notes dated August 1996"). Apparently, the ALJ believed that the principle of *res judicata* prevented him from considering evidence of Nickerson's status prior to that date, particularly evidence that was part of the record in a prior application.

The Commissioner cites two cases in support of this view: <u>Torres v. Secretary of Health & Human Servs.</u>, 854 F.2d 1136, 1137 (1st Cir. 1998), and <u>Passopulos v. Sullivan</u>, 976 F.2d 642, 645-48 (11th Cir. 1992). She claims that these cases stand for the proposition that an ALJ, applying *res judicata,* may refuse to consider any and all evidence included in the claimant's earlier application after a final decision on the merits of that application has been rendered. <u>See</u> Def.'s Mot. at 4 (Doc. No. 7). I disagree.

As an initial matter, neither case should be interpreted as broadly as the Commissioner claims. <u>Torres</u> states only that *res judicata* applies to bar the reexamination of evidence where "the current claim has the same factual basis as the earlier claim." 845 F.2d at 1138. In this case, the current claim at issue has a different factual basis. Here, the date of onset is alleged to be July 1, 1992. In the prior application, the date of onset is

9

alleged to have been April 22, 1992.  Likewise, here, the period under review is April 26, 1995 to March 31, 1997.  At issue in the prior application, on the other hand, was Nickerson's status during an earlier period of time.  The factual basis for each claim, as well as the issues addressed, are therefore distinct. As a result, Torres does not apply.

The same is true with respect to Passopoulus.  Indeed, far from restricting an ALJ's discretion, Passopoulus, at the very least, preserves it.  It affirms that an ALJ has the power to reexamine evidence presented in prior applications when new issues bearing on the prior application arise.  See 976 F.2d at 646 (holding that res judicata does not apply, and that an ALJ may consider evidence presented in a prior application, where newly applicable regulations require that the application be reconsidered).  Therefore, it does not, as defendant argues, restrict an ALJ's ability to examine facts from a prior application that bear on new and different issues raised in a subsequent application.  In fact, it appears to do the very opposite.  It vests the ALJ with authority to do so.

The question that remains, then, is whether there is any other reason why res judicata should bar an ALJ from considering

10

evidence produced at a prior proceeding in a subsequent proceeding that addresses a different claim. I hold that there is not. *Res judicata* bars the re-litigation of an identical claim by identical parties once a final decision has been rendered on that claim. See Breneman v. United States ex rel. FAA, 381 F.3d 33, 38 (1st Cir. 2004). To be identical, a successor claim must arise out of the same "transaction or occurrence" as its predecessor. Id. Such is not the case here. Though the ALJ has rendered a decision on a past application, that decision was with respect to Nickerson's status prior to April 26, 1995. The current application relies on an augmented set of facts and seeks the same determination, but for a period beginning on that date. It therefore presents a new claim arising out of a different set of transactions and occurrences. *Res judicata* thus may not be used to bar review of evidence generated prior to April 26, 1995, including the testimony of Drs. Theis, Sobel, and Davison.

The ALJ did not rely on the related doctrine of *collateral estoppel*. Unlike *res judicata*, *collateral estoppel* precludes the re-litigation of individual issues, not claims. See Parklane

11

Hosiery Co. v. Shore, 439 U.S. 322, 327 (1979). The Commissioner has failed, however, to demonstrate that any issues would be re-litigated were the ALJ to consider the testimony of Drs. Thies, Sobel and Davison. This testimony was presented to prove that Nickerson was disabled prior to April 26, 1995. The ALJ credited it in full, Tr. 297-99, and still held that Nickerson was not disabled. Her ruling, however, was confined to a period prior to April 26. Nickerson now offers the same evidence, but for a different purpose. He offers it to demonstrate the full extent to which his condition has deteriorated since the ALJ rendered her initial decision. See Pl.'s Mot. to Rev. Comm. at 10 (Doc. No. 6). Offering old testimony for a new purpose is not barred by *collateral estoppel*.

The Commissioner offers no other reason why evidence of Nickerson's status prior to April 26, 1995 should not have been heard. As evidence of Nickerson's cumulative experience, and specifically of the degree to which his health has deteriorated over the year, it is relevant to a determination of Nickerson's status after April 26, 1995. Thus, on remand, I instruct the Commissioner to consider it in evaluating Nickerson's application.

12

**B.   Did the ALJ Err in its Assessment of Nickerson's Mental Status?**

Nickerson next argues that ALJ Klingebiel erred in assessing the scope of his mental limitations.  The ALJ's most egregious mistake, he claims, is its failure to properly credit the testimony of Dr. Hani Khouzam.  Dr. Khouzam concluded that Nickerson had a Global Assessment of Function ("GAF") of 35[2] and that he was consequently unable to maintain full-time employment. Pl.'s Mot. to Rev. Comm. at 11 (Doc. No. 6).

While Nickerson is correct that it is improper for an ALJ to ignore evidence, he has not shown that the ALJ did so here. Indeed, Dr. Khouzam's assertions are specifically cited in ALJ Klingebiel's findings.  Tr. 606.  Dr. Khouzam was not the last word on the issue, however.  The Manchester Compensation and Pension Board diagnosed Nickerson with a GAF of 60.  Tr. 532. This score indicates moderate social and occupational functioning.  See Def.'s Mem. of Law at 11 (Doc. No. 7) (citing American Psychiatric Ass'n, Diagnostic Statistical Manual of

---

[2]   The Global Assessment of Functioning Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for herself).  American Psychiatric Ass'n, Diagnostic Statistical Manual of Mental Disorders, 32 (4th ed. 1994).

Mental Disorders, 32 (4th ed. 1994)).

That the ALJ did not give Dr. Khouzam's testimony conclusive authority does not constitute reversible error. Indeed, it is within the purview of the ALJ to weigh evidence and make credibility determinations. See Irlanda Ortiz, 955 F.2d at 769. The ALJ did so here and concluded the case in the Commissioner's favor. Though there is much in the record to suggest that Nickerson is severely limited in the choice of occupations available to him,[3] it is not the court's function to disturb conclusions drawn by the ALJ if substantial evidence supports those conclusions. See Tsarelka, 842 F.2d at 535.

The question, then, is whether substantial evidence supports the ALJ's conclusion. I find that it does. Included in his evaluation was the Manchester Board's assessment, as well as a determination by a state agency psychologist that there was insufficient medical evidence to conclude that Nickerson suffered from a mental impairment. Tr. 508. These diagnoses constitute

_____

[3] This fact was not ignored by the ALJ. Indeed, based on evidence of Nickerson's mental and emotional instability, the ALJ limited the descriptive scope of potential occupations to "low stress jobs." See Tr. 609. Excluded from this category were jobs that required him to wait on the public or those that involved fast-paced assembly. Id.

14

substantial evidence. To draw a different conclusion would require the court to weigh evidence and make credibility judgments. As noted, in the context of Social Security cases, that is not this court's function. I thus find that the ALJ did not err in its overall assessment of Nickerson's mental status.

C. **Did the Hypothetical Question posed by the ALJ to the Vocational Expert Properly Reflect his Assessment of Nickerson's Capacity to Work?**

Finally, Nickerson's asserts that the ALJ improperly shaped the vocational expert's scope of inquiry by asking the vocational expert to answer an erroneous hypothetical question. First, Nickerson argues that the ALJ should have required the vocational expert to limit his inquiry to "low stress jobs." Next, he argues that in shaping the hypothetical question, the ALJ ignored evidence prior to April 26, 1995.

As to his first assertion, "stress is not a characteristic of a job, but instead reflects an individual's subjective response to a particular situation." Lancellotta v. Sec'y of HHS, 806 F.2d 284, 285 (1st Cir. 1986). Therefore, the articulation of a threshold stress level could only provide minimal, if any, guidance. Id. The failure to instruct the vocational expert to search only for low stress jobs in the

15

national economy was therefore not in error.  <u>Cf.</u>  <u>Renfro v.</u> <u>Barnhart</u>, 20 Fed. Appx. 431, 437 (6th Cir. 2002) (holding that the ALJ did not act improperly by failing to instruct the vocational expert to look only for "low stress jobs," and further holding that it acted properly by instructing the vocational expert to search for jobs with concrete limitations such as those that required only "slow-paced" work and "minimal public interaction").

As to Nickerson's second claim, however, I conclude that the ALJ has erred.  Consistent with the discussion above, in shaping its hypothetical question on remand, it must take into consideration evidence of Nickerson's status prior to April 26, 1995.  Its failure to do so here constitutes error.


## IV.  CONCLUSION

In light of the foregoing analysis, the plaintiff's motion to reverse and remand (Doc. No. 6) is granted in part and denied in part.  Likewise, the Commissioner's motion to affirm (Doc. No. 7) is granted in part and denied in part.  Because this is a

16

sentence four remand, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

February 24, 2005

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.