**Audeliz VELEZ–PANTOJA, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

### No. CIV. 09–2234 BJM.

United States District Court,
D. Puerto Rico.

Nov. 16, 2010.

Salvador Medina–De–La–Cruz, Salvador Medina De La Cruz Law Office, San Juan, PR, for Plaintiff.

Ginette L. Milanes, U.S. Attorney's Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

BRUCE J. McGIVERIN, United States Magistrate Judge.

Plaintiff Audeliz Vélez–Pantoja ("Vélez") filed a complaint seeking judicial review of the decision of the defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), finding that Vélez was not disabled and hence not entitled to disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Vélez asks for the judgment to be reversed or remanded for a rehearing. (Docket No. 13). Vélez filed a memorandum of law in support of his position. (Docket No. 13). The defendant answered the complaint and filed a memorandum of law in support of his decision. (Docket No. 17). The parties have consented to have the case heard before me. (Docket No. 15). After careful review of the administrative record and the briefs on file, the Commissioner's decision is affirmed.

## LEGAL STANDARD

The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso–Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999); *Da Rosa v. Sec'y of Health and Human Servs.*, 803 F.2d 24, 26 (1st Cir.1986); *Ortiz v. Sec'y of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Sec'y of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987). The burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act ("Act"). *See Bowen v. Yuckert*, 482 U.S. 137, 146–47, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[1] 42 U.S.C.

---

1. The phrase "work which exists in the na-
tional economy" means "work which exists in

§ 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. § 404.1520; *see also Bowen,* 482 U.S. at 140–42, 107 S.Ct. 2287; *Goodermote v. Sec'y of Health and Human Servs.,* 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. However, if the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in which it is determined whether the claimant has an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled.

20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process calls for a determination of whether the claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

■■ The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability. *Santiago v. Sec'y of Health and Human Servs.,* 944 F.2d 1, 5 (1st Cir.1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Sec'y of Health and Human Servs.,* 890 F.2d 520, 524 (1st Cir.1989).

## FACTUAL AND PROCEDURAL BACKGROUND

Vélez is now forty years old and has an eleventh grade education. (Tr. 295, 297). He worked in Outback Steak House for just over ten years. (Tr. 297). Vélez worked five days a week for twelve to fifteen hours a day, supervised forty employees, cooked items and prepped. (Tr. 298). On February 15, 2004, while working at Outback Steak House, he suffered an accident. (Tr. 297). As a result of his accident, Vélez injured his neck and lower lumbar area (Tr. 300), and stopped working.

Five days after his accident, Vélez began seeing Dr. Joseph Neiroda, a chiropractor.

significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

(Tr. 108). From February 20 to April 12, 2004, while seeing Dr. Neiroda, Vélez consistently complained of severe neck and back pain, of pain while bending, lifting, moving, sitting, twisting, walking, stretching, and driving. He also complained of bilateral leg pain and weakness radiating to the feet with frequent numbness. (Tr. 97, 98, 99, 100, 101, 102, 103, 104, 105).

An MRI of Vélez's lumbar spine, done on March 18, 2004, revealed disc bulges at the L3–L4 and L4–L5 levels with left foraminal compromise and annular tear noted at the L4–L5 level. (Tr. 106). On April 16, 2004, Vélez began seeing Dr. Nazar Haidri. (Tr. 106). On April 30, 2004, Dr. Haidri prescribed Flexeril, Bextra, a cock up splint for both wrists, and a left elbow pad, due to the weakness and numbness of both arms and hands that Vélez was experiencing. (Tr. 111). An MRI of Vélez's cervical spine taken on May 1, 2004 revealed exaggerated lordosis suggesting muscular and/or ligamentous laxity; it also revealed posterior herniation of discs at the C5–C6 and C6–C7 levels. (Tr. 133).

On May 18, 2004, Vélez began meeting with Dr. Kaisman for pain management. (Tr. 197). Dr. Kaisman prescribed Vicodin, hot and cold packs, range of motion exercises, physical therapy, and epidural steroid injections. (Tr. 202, 204, 207, 209, 211). Vélez underwent a cervical discectomy and decompression of the C5–C6 and C6–C7 discs, a fluoroscopy, a cervical discogram, and an epidural steroid injection on May 5, 2006. (Tr. 237–239). On April 1, 2005, he underwent the same procedure for the L3–L4 and L4–L5 discs. (Tr. 240–242). Post-operative reports show continued neck and back pain. (Tr. 214, 216). Dr. Kaisman's last medical report was dated January 28, 2008, and it reported that Vélez was still suffering from neck and low back pain. (Tr. 288).

The Residual Functional Capacity Assessment ("RFC") was performed by medical consultant P. Carbonara on November 16, 2005. (Tr. 232). The RFC found that Vélez had significant exertional limitations, namely that he could occasionally and frequently lift up to ten pounds, and that he could stand and/or walk for a total of two hours and sit for a total of six hours in an eight-hour workday. The RFC found that he had unlimited ability to push and/or pull, including operation of hand and/or foot controls. The RFC found that he could occasionally climb, stoop, kneel, and crouch, but could never balance or crawl. The RFC further notes Vélez's allegations of neck and back pain resulting from his work injury, and cited specific medical evidence in support of these findings. (Tr. 226–27).

Vélez takes 750 milligrams of Vicodin ES four to six times daily, which he testified makes him sleep all day and keeps him drowsy throughout the day. He also takes Aleve or Tylenol for headaches and occasionally takes Celebrex for inflammation. (Tr. 301).

### DISCUSSION

The analysis in this case centers on the ALJ's determination at step five in the sequential evaluation process contained in 20 C.F.R. § 404.1520. At step five, the ALJ used the Medical–Vocational Guidelines ("Grid") and the testimony of a Vocational Expert ("V.E."). The ALJ concluded that the testimony of a V.E. was required due to Vélez's additional limitations. The ALJ sent interrogatories to the V.E. in order to determine the extent to which these limitations erode the unskilled sedentary occupational base and whether jobs exist in the national economy for an individual of Vélez's age, education, work experience, and RFC. (Tr. 25). Vélez argues that the ALJ did not

include all of his ailments in the hypothetical questions posed to the V.E. In particular, he argues that limitations in head rotation, bending, and stooping, left elbow pain, and arm weakness and numbness, as well as the side effects caused by his medication (Vicodin), were left out of the hypothetical questions given to the V.E. (Docket No. 13, p. 16–17). Vélez argues that the omission of these facts makes the hypotheticals posed to the V.E. inadequate depictions of his limitations, so the V.E.'s testimony cannot constitute substantial evidence. (*Id.*).[2] The Commissioner argues that the ALJ did not ignore any medical evidence, but did not consider all of Vélez's claims to be credible and therefore did not include all of Vélez's alleged symptoms in his hypotheticals. (Docket No. 18, p. 13–14).

■■ A proper hypothetical question is one that "can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir.1994) (per curiam). A V.E.'s testimony "can not constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all of the claimant's limitations, including pain." *Cooper v. Sullivan,* 880 F.2d 1152, 1158 n. 13 (9th Cir.1989) (citation omitted); *Arocho v. Sec'y of Health and Human Servs.,* 670 F.2d 374, 375 (1st Cir.1982).

The hypothetical questions given to the V.E. mentioned that Vélez had to work a job where he needed to alternate between standing and sitting.[3] The ALJ considered all the evidence of record (Tr. 23) and gave great weight to Dr. Fernando's report. (Tr. 24). However, the ALJ did not find Vélez's allegations concerning the intensity, persistence and limiting effects of his symptoms to be entirely credible. (Tr. 23). The ALJ noted that when Vélez was examined by Dr. Fernando in 2006, he did not appear to be in any distress and was able to dress himself and get on and off the examination table unassisted. The ALJ further noted that the claimant was able to shower and dress himself, prepare light meals, play the drums, walk, drive, use public transportation, go to church, and attend to his personal needs. Moreover, the claimant showed no distress at the hearing before the ALJ. (Tr. 23–24).

■ It is well within the ALJ's authority to weigh the evidence, to determine the credibility of the plaintiff's subjective complaints, and to use only credible evidence in posing a hypothetical question to a vocational expert. *See Arocho,* 670 F.2d at 375. Hypothetical questions need only "reasonably incorporate[ ] the disabilities *recognized by the ALJ.*" *Bowling,* 36 F.3d at 435 (citing *Morris v. Bowen,* 864 F.2d 333, 336 (5th Cir.1988) (unpublished)) (emphasis added). Consequently, the hypothetical was appropriate because the ALJ based it on medical data and the ALJ's credibility determinations.

Next, Vélez argues that the ALJ's conclusions as to his RFC assessment are

**2.** Vélez also claims that in his interrogatory number 11 to the V.E. (Tr. 89), the ALJ assumed that Vélez could perform sedentary work, thereby preventing the V.E. from providing his opinion regarding whether Vélez could perform work in a specific range. (Docket No. 13, p. 17–18).

**3.** In the challenged hypothetical, the ALJ asked the V.E.:

> Assume an individual of the claimant's age, education and work history. Assume further that this individual is restricted to sedentary work and further has to work at a job where he can alternate standing and sitting at his election. Would there be jobs for such an individual in the local or national economy that such an individual could perform?
> (Tr. 89).

unsupported by the evidence on record and that the RFC assessment used by the ALJ lacks any meaningful analysis, leaving the ALJ to base his decisions about Vélez's RFC on unsubstantiated evidence and raw medical data that a lay person, such as the ALJ, cannot interpret. (Docket No. 13, p. 21–22).

 "In the ... RFC assessment, the medical consultant is to describe the relationship between the medically determinable impairment and his/her conclusions of RFC which have been derived from the evidence, including a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence." *Avery v. Sec'y of Health and Human Servs.*, 797 F.2d 19, 29 (1st Cir.1986) (citation omitted). Here, the RFC was prepared by a non-examining medical consultant. Although the better practice would be to have the RFC prepared by an examining physician, *see, e.g., Rivera–Figueroa v. Sec'y of Health and Human Servs.*, 858 F.2d 48, 52 (1st Cir. 1988), the consulting physician in this case cited specific medical evidence on record in support of his findings of exertional and postural limitations, thereby distinguishing the present case from the case cited by plaintiff. *See Morales Colón v. Comm'r of Social Security*, 245 F.Supp.2d 395, 400 (D.P.R.2003). Moreover, unlike in *Rivera–Figueroa*, where the ALJ found the claimant had no significant limitations without the aid of even a non-consulting physician, the ALJ in this case found that Vélez suffered from significant limitations, though not to the extent the plaintiff claims. I therefore find that the ALJ's determinations regarding the RFC, assisted by a non-consulting physician, are supported by substantial evidence on the record.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is affirmed. Judgment to be entered.

**IT IS SO ORDERED.**