**Aixa I. RODRIGUEZ–GONZALEZ, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

Civil No. 10–2199 (ADC).

United States District Court, D. Puerto Rico.

March 26, 2012.

Salvador Medina–De–La–Cruz, Salvador Medina De La Cruz Law Office, San Juan, PR, for Plaintiff.

Ginette L. Milanes, U.S. Attorney's Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

AIDA M. DELGADO–COLÓN, Chief Judge.

Plaintiff, Aixa I. Rodríguez–González ("plaintiff" or "Rodríguez–González"), filed the present action against defendant, Michael J. Astrue ("defendant" or "Astrue"), seeking review of an Administrative Law Judge's ("ALJ") decision to deny plaintiff's claim for disability benefits pursuant. **Docket No. 1.** On May 5, 2011, defendant answered the complaint. **Docket No. 6.** The parties each submitted a memorandum of law and defendant filed the certified administrative record of the proceedings and evidence considered by the administrative law judge. **Docket Nos. 11, 12.**

Pending before the court is Magistrate–Judge Justo Arenas' ("Magistrate–Judge") Report and Recommendation ("R & R") recommending that the decision of the Social Security Commissioner be affirmed. **Docket No. 16.** Plaintiff has failed to interpose any objections.

## I. Applicable Standard of Review

A district court may refer pending motions to a Magistrate–Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); L. Cv. R. 72(a). Any party adversely affected by the recommendation issued may file written objections within fourteen (14) days of being served with the report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b); L. Civ. R. 72(d). A party that files a timely objection is entitled to a de novo determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F.Supp.2d 189, 191–92 (D.P.R. 2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). The objections must specifically identify those findings or recommendations to which objections are being made. "The district court need not consider frivolous, conclusive, or general objections." *Rivera–García v. United States,* Civ. No. 06–1004(PG), 2008 WL 3287236, *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n,* 834 F.2d 419 (5th Cir.1987)). Moreover, to the extent the objections amount to no more than general or conclusory objections to the report and recommendation, without specifying to which issues in the report objection is made, or where the objections are repetitive of the arguments already made to the magistrate-judge, a *de novo* review is unwarranted. *Id.* "Instead, the report and recommendation is reviewed by the district judge for clear error." *Id.* (citing *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) ("It is improper for an objecting party to … submit[ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.")).

In conducting its review, the court is free to "accept, reject, or modify, in whole or in part, the findings or recom-

mendations made by the magistrate-judge." 28 U.S.C. § 636(a)(b)(1); *see also Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodríguez v. Pfizer Pharma., Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). Hence, the court may accept those parts of the report and recommendation to which the plaintiff does not object. *See Hernández–Mejías v. General Elec.*, 428 F.Supp.2d 4, 6 (D.P.R. 2005) (citing *LaCedra v. Donald W. Wyatt Det. Facility*, 334 F.Supp.2d 114, 125–26 (D.R.I.2004)).

## II. Conclusion

After careful consideration of the Report and Recommendation and the record, the court hereby **ADOPTS** the Magistrate-Judge's Report and Recommendation in full. **Docket No. 16.** Defendant's final decision is hereby **AFFIRMED** and the instant action is **DISMISSED.**

The Clerk of Court is to enter judgment accordingly.

**IT IS SO ORDERED.**

## *MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

JUSTO ARENAS, United States Magistrate Judge.

On December 9, 2010, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied her application for a period of disability and Social Security disability insurance benefits. She filed a memorandum of law seeking reversal of the final decision on July 7, 2011. (Docket No. 11.) Defendant filed a memorandum in support of the final decision on August 2, 2011.

 Plaintiff has the burden of proving that she has become disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 138, 107

S.Ct. 2287, 96 L.Ed.2d 119 (1987). A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months. *See* 42 U.S.C. § 416(i)(1). In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits. There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity. *See McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1120 (1st Cir.1986). Partial disability does not qualify a claimant for benefits. *See Rodríguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965).

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole. In order to be entitled to such benefits, plaintiff must establish that she was disabled under the Act at any time between June 18, 2003, her alleged onset date, and March 31, 2006, when she last met the earnings requirements for disability benefits under the Social Security Act. *See Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 140 n. 3 (1st Cir.1987).

After evaluating the evidence of record, Administrative Law Judge John D. McNamee–Alemany entered the following findings on July 24, 2007:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2006.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date

on June 28, 2003 through the date last insured of March 31, 2006.

3. Through the date last insured, the claimant had the following severe impairments: bilateral carpal tunnel syndrome; herniated disc at L5–S1 level; lumbar spondylosis, and major depressive disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work, providing the opportunity to alternate sitting and standing to relieve pain or discomfort; she could occasionally climb, stoop, kneel, crouch or crawl; any task should not have required frequent handling.

6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on December 9, 1966 and was 39 years old, which is defined as a younger individual age 18–49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is unable to communicate in English (20 CFR 404.1564).

9. Transferability of skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were job that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was not under a disability as defined in the Social Security Act, at any time from June 28, 2003, the alleged onset date, through March 31, 2006, the date last insured. (20 CFR 404.1520(g)).

Tr. at 35–40.

■ The administrative law judge ended the sequential inquiry at step five. At this level, it has already been determined that the claimant cannot perform any work she has performed in the past due to a severe impairment or combination of impairments. The inquiry requires a consideration of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work. If the claimant cannot, a finding of disability will follow. *See* 20 C.F.R. § 404.1520(f). At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy given the above factors. *See Nguyen v. Chater,* 172 F.3d 31 (1st Cir.1999); *Lancellotta v. Secretary of Health & Human Servs.,* 806 F.2d 284 (1st Cir.1986); *Vázquez v. Secretary of Health & Human Servs.,* 683 F.2d 1, 2 (1st Cir.1982).

This decision was reviewed by the Appeals Council upon request by plaintiff. (Tr. at 75–81.) The Appeals Council then vacated that final decision. The Appeals Council noted that evidence from a voca-

tional expert was needed in order to determine the extent to which claimant's limitations, such as alternating sitting and standing, with no frequent handling, and only occasional stooping, further eroded the claimant's remaining occupational base for medium work. (Tr. at 84.) The Appeals Council noted that claimant had waived her right to an oral hearing. On remand, the Appeals Council urged offering another hearing opportunity to the claimant. (Tr. at 85.) Specific instructions were given on remand for the administrative law judge to further consider claimant's maximum residual functional capacity and provide appropriate rationale with specific reference to evidence of record in support of the assessed limitations, and to further evaluate the mental impairment in accordance with special techniques described in 20 CFR 404.1520a, making specific findings and appropriate rationale for each of the functional areas, and identity specific mental limitations which result from the severe mental impairments. The administrative law judge was also directed to obtain from a vocational expert evidence to clarify the effect of the assessed limitations on the claimant's occupational base, directing the method of use of hypothetical questions which should reflect the specific capacity/limitations established by the record as a whole. This includes asking the vocational expert or identify examples of appropriate jobs and to state the incidence of such jobs in the national economy. Conflicts between the occupational evidence provided by the expert and information in the Dictionary of Occupational Titles (DOT) and a companion publication, were also to be addressed. (Tr. at 84–85.)

After evaluating the evidence of record, Administrative Law Judge Glenn G. Meyers entered the following findings on August 18, 2009.

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2006.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 28, 2003 through her date last insured of March 31, 2006. (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: back problems and mental condition (20 CFR 404.1520(c)).

4. Through the date last insured, the did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she was limited to simple, repetitive work with no contact with public and only occasional contact with peers and supervisors.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 9, 1966 and was 39 years old, which is defined as a younger individual age 18–49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is unable to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were job that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability as defined in the Social Security Act, at any time from June 28, 2003, the alleged onset date, through March 31, 2006, the date last insured. (20 CFR 404.1520(g)).

Tr. at 18–23.

Again, the finding of the commissioner reflects an application of step five, described above. This last decision was denied review by the Appeals Council. It is thus the final decision of the Commissioner. (Tr. at 5–7.)

Plaintiff filed an application for benefits on April 15, 2004 alleging disability due to a herniated disc, a hip condition, a spinal impairment, a sciatic nerve, muscle spasm, carpal tunnel syndrome, and depression. (Tr. at 154, 190, 206).

Plaintiff argues in her memorandum of law that the administrative law judge did not apply the correct legal standard in presenting the vocational expert with hypothetical questions, and in making findings of residual functional capacity that did not convey all of plaintiff's limitations. (Docket No. 11 at 3.) She argues that there was error in the second administrative law's ignoring a finding made by the first administrative law judge (any task should not have required frequent handling), citing *Drummond v. Comm'r of Social Security*, 126 F.3d 837, 842 (6th Cir.1997.) (Tr. at 37.) Plaintiff focuses on the findings of her treating physicians, Dr. Lispoldo Orama and Dr. Ronald Malave, as well as the testimony of the vocational expert. She argues that the administrative law judge asked questions which produced irrelevant answers from the expert. The administrative law judge is accused of discarding a state agency physician's assessment of a residual functional capacity assessment for medium work, because there was recurrent treatment at the State Insurance Fund. The presence of persistent pain and need to alternate positions were not posed to the expert and the administrative law judge should have arguably reached an opposite decision when the expert said that with certain limitations (which were present), plaintiff would not be able to perform them because the majority of the time, she would be seated. Plaintiff emphasizes the lack of relevance of the administrative law judge's questions to the vocational expert and his leaving out crucial and relevant factors, especially those required for a longitudinal evaluation of her abilities. The administrative law judge is also faulted for not providing a line by line evaluation of plaintiff's ability to perform substantial gainful activity, and for not granting controlling weight to plaintiff's treating physicians. Plaintiff argues that the administrative law judge did not make specific reference to the evidence of record which contradicted the reports of Dr. Orama and Dr. Malave, which are consistent within themselves, and that therefore they should have been given controlling weight.

The defendant argues that during the covered period, plaintiff declined back sur-

gery after a neurologist found her to have a reduced range of motion and stiffness. (Tr. at 272). The defendant details the relevant medical evidence after the expiration date of plaintiff's insured status, March 18, 2005 which includes reports of Dr. Malave dated December 14, 2006 (Tr. at 310), and of Dr. Orama, dated April, 2007. (Tr. at 326–7.) It is argued that the record does not contain any opinion during the relevant period that supports plaintiff's position that she has limitations precluding sedentary work. For example, Dr. Orama's opinion is dated more than one year after the insured status period expired and he never stated that the restrictions related occurred during the covered period. The defense notes that residual functional capacity findings are supported by the physical residual functional capacity assessment. (Tr. at 288.)

At the administrative hearing, Dr. Marieva Puig, vocational expert, summarized plaintiff's previous jobs and their requirements. (Her prior relevant work were of cashier and manager.) She was asked to consider those requirements for a person limited to sedentary work who can execute simple and repetitive tasks, who cannot have contact with the public and whose maximum occupational contact would be with supervisors and fellow employees. (Tr. at 335). The expert said none of the prior jobs could be executed. The expert then said that other jobs existed that could be performed with these added limitations. Such jobs are Document Preparer (Code 249.587–018), Addresser (prepares and returns papers)(Code 209.587–010). About 2,500 for each of these jobs exist in Puerto Rico. (Tr. at 336). Counsel asked if the level of production was demanding, and the vocational expert said Yes, yes, definitely, (Tr. at 337). There is an expectation of quantity and quality in itineraries of persistence and rhythm to maintain production of the work being done. If there were significant limitations with the hands or fingers, such as a person with carpal tunnel syndrome, then the expert noted that in her opinion they would not be able to execute the quality or quantity of the job in a sustained manner. (Tr. at 338). Considering a person that can only be seated or standing between 15 or 20 minutes, and cannot be seated, standing or walking for more than two hours a day, they would not be able to execute the job in a sustained manner. Considering the emotional component as reflected in the file, the vocational expert's point of view was that the person would not be able to perform these jobs in a sustained manner, because she would interrupt the standard of being able to produce the quantity of work. Adding stress to the work equation, the vocational expert said that plaintiff cold not perform in a satisfactory manner. (Tr. at 340).

A Physical Residual Functional Capacity Assessment conducted by internist Dr. Francisco De La Obra on August 5, 2004, reflects exertional limitations of occasionally lifting 50 lbs, frequently lifting 25 lbs., and ability to sit, stand and/or walk about 6 hours in an 8–hour workday. There were no limitations for pulling and pushing (Tr. at 288). There were frequent postural limitations in balancing, and occasional limitations in climbing, stooping, kneeling, crouching and crawling. There were no manipulative, visual, communicative or environmental limitations. (Tr. at 290–91.) The internist made reference to the parts of the record he relied on in making this assessment. (Tr. at 288.) The assessment was reviewed and affirmed by Dr. Jose R. Pesquera Garcia, internist. (Tr. at 294.)

On July 15, 2004, Dr. Alfredo Perez Canabal found no gait disturbance, no atrophy or weakness, other than Straight Leg Raising test being positive at 60 degrees. (Tr. at 21,) There was adequate

motor and sensory functions. Plaintiff had full strength, graded 5/5. Phallen and Tinnel procedures were positive. Hoffman and Babinski were negative. He diagnosed carpal tunnel syndrome and low back pain. (Tr. at 279.)

A clinical summary dated May 15, 2007 by Dr. Ronald Malave includes a current mental residual functional capacity assessment which reflects plaintiff's ability to remember locations and work-like procedures, and to understand and remember detailed instructions as extremely limited, to understand and carry out simple and detailed instructions as markedly limited. (Trat 319.) Her limitations in sustained concentration and persistence were mostly extremely limited. (Tr. at 319–20). Social interaction factors were either markedly or extremely limited. (Tr. at 320–21.) Factors of adaptation were markedly or extremely limited. (Tr. at 321–22.) The doctor noted "The sum of chronic pain, depression, insomnia and psychosis (such as hallucinations) create significant hurdles for this patient to function in a work setting." (Tr. at 322.) Dr. Malave first treated plaintiff on March 18, 2005. (Tr. at 309.) He diagnosed major depressive disorder with psychotic features, deferred. (Tr. at 316–17.)

Dr. Lispoldo Orama Alvarez first saw plaintiff in February 2000 and during monthly visits until her last visit on May 31, 2007. (Tr. at 323.) He diagnosed ankylotic rheumatoid arthritis and major depression (major depressive disorder with psychotic features) and found significant limitations in physical function capacity such as sitting for less than two hours in an eight-hour workday, and the same for standing and/or walking. Plaintiff could lift no weights. He described plaintiff's pain as severe to moderately severe.

█ Plaintiff argues that the administrative law judge did not give proper weight to the treating physicians' medical reports, that is, the reports of Dr. Orama and Dr. Malave. it is well settled that even the opinions of treating physicians are not entitled to greater weight merely because they are treating physicians. *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987); *Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982); *Pérez v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1, 2 (1st Cir.1980); *Delgado-Quiles v. Comm'r of Soc. Sec.*, 381 F.Supp.2d 5, 8–9 (D.P.R.2005); *Rosado-Lebrón v. Comm'r of Soc. Sec.*, 193 F.Supp.2d 415, 417 (D.P.R.2002). The administrative law judge noted that plaintiff injured her back in 1997 and received treatment, resulting of an award by the State Insurance Fund of a 10% disability for permanent partial loss of physiological functions. Notwithstanding a diagnosis of radiculopathy by her treating physician, other than a herniation at L5–S1, the administrative law judge found no clinical correlation with neurological deficits regarding her lower extremities.

█ The administrative law judge considered the treating physicians' opinions about plaintiff's disability, but in view of the overall record, those opinions were not persuasive in regard to the period under consideration. The administrative law judge found that the evidence for after the date last insured seems to show a worsening of her condition, for which the judge found plaintiff to have a residual functional capacity for less than the full range of sedentary work. (Tr. at 21.) Controlling weight may be granted when the opinion of the treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d). The opinion of such a treating physician can be rejected if it is inconsistent with other substantial evidence in the record. The

weighing of such inconsistencies is a function delegated to the administrative law judge, not to the court on judicial review. Thus, the administrative law judge was not required to give the opinions controlling weight. *See* 20 C.F.R. § 404.1527(d); *Berríos-Vélez v. Barnhart,* 402 F.Supp.2d 386, 391 (D.P.R.2005); *cf. Sánchez v. Comm'r of Soc. Sec.,* 270 F.Supp.2d 218, 221 (D.P.R.2003).

In relation to the mental component, the administrative law judge noted the lack of treatment notes justifying the extreme limitations proposed by Dr. Malave. There is no long history of psychiatric illness or treatment, with ups and downs. The judge found that the paucity of evidence, coupled with plaintiff's unavailability to answer questions and discuss her conditions is detrimental to her case. The administrative law judge found that nothing supports Dr. Malave's conclusions as to severity (Tr. at 21.) The depression from the chronic pain manifested itself mostly by insomnia, isolation and crying spells. (Tr. at 20.) Psychiatric treatment was started in January 2005. The administrative law judge noted that the very scant medical evidence does not establish that plaintiff needed constant supervision and assistance because of inability to function independently. Nor has that evidence shown plaintiff to have experienced repeated episodes of decompensation, or of being unable to function outside a highly supportive environment for a year or more, among others. (Tr. at 19.)

In relation to plaintiff's residual functional capacity, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines, known as the GRID, is appropriate. If the applicant's limitations are exclusively exertional, then the Commissioner can meet the burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical–Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1–3 (2001), *cited in* 20 C.F.R. § 416.969; *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). If the facts of the applicant's situation fit within the GRID's categories, the GRID "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), *cited in* 20 C.F.R. § 416.969. However, if the applicant has non-exertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, *id.* § 200(e)), that restrict his or her ability to perform jobs he would otherwise be capable of performing, then the GRID is only a "framework to guide [the] decision." 20 C.F.R. § 416.969a(d) (2001); *Seavey v. Barnhart,* 276 F.3d 1, 5 (1st Cir.2001). In the case before the court, the administrative law judge used the GRID as a framework for decision-making as reflected in finding number 9.

■ The final decision reflects a reasonable balancing and weighing of evidence and the making of credibility determinations (Tr. at 20) by the administrative law judge. *See Gray v. Heckler,* 760 F.2d 369, 374 (1st Cir.1985); *Tremblay v. Sec'y of Health & Human Servs.,* 676 F.2d 11, 12 (1st Cir.1982); *Rodríguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981). In that weighing, the power to resolve conflicts in the evidence lies with the Commissioner, not the courts. *Id.*; *see Barrientos v. Sec'y of Health & Human Servs.,* 820 F.2d 1, 2–3 (1st Cir. 1987). The rationale of the administrative law judge is sufficiently detailed and a reasonable weighing of the evidence does not point to an *a fortiori* requirement that

the Commissioner find plaintiff to be disabled under the Social Security Act.

██ This is a record that may very well support an opposite finding. Nevertheless, looking at the evidence as a whole, and even if I disagree with the final decision, I cannot find that the Commissioner's decision has failed to comply with the requirements of the substantial evidence rule. The reports of Dr. Orama and Dr. Malave, compared to the reports of Dr. Canabal, Dr. De La Obra and Dr. Garcia, as well as a reasonable weighing of the testimony of the vocational expert, and plaintiff's relatively conservative treatment, including treatment from a chiropractor, support the final decision. (Tr. at 185, 193, 209, 218, 225, 235). The hypothetical questions posed were based upon the record and are typical multilayered questions made of experts. There is no perfect method of asking hypothetical questions. Hypothetical questions need only "reasonably incorporate [ ] the disabilities recognized by the [administrative law judge]". *Velez–Pantoja v. Astrue,* 786 F.Supp.2d 464, 469 (D.P.R.2010), quoting *Bowling v. Shalala,* 36 F.3d 431, 435 (5th Cir.1994), citing *Morris v. Bowen,* 864 F.2d 333, 336 (5th Cir.1988). Plaintiff sometimes used a cane and sometimes did not during the covered period. (Tr. at 243, 247, 251, 253, 255.) There is certainly evidence from the treating physicians which reflects that plaintiff's condition deteriorated outside the covered period. The administrative law judge recognized this. Nevertheless, that evidence is lacking during the covered period. Finally, while plaintiff argues that it was error to ignore part of the first administrative law judge's findings, that type of argument may be counterproductive in relation to other findings by the same administrative law judge. In any event, the first findings were vacated and they did not comprise the final decision subject of this court's review.

In view of the above, and there being no good cause to remand, I recommend that the final decision of the Commissioner be affirmed and that this action be dismissed.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir. 1987); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

March 1, 2012.