**Santiago Eduardo PADILLA–GOMEZ, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**Civil No. 13–01922 (ADC).**

United States District Court, D. Puerto Rico.

Signed Jan. 29, 2015.

---

Louis A. De Mier–LeBlanc, Hernandez Nazario & Demier LeBlanc Law Office, San Juan, PR, for Plaintiff.

Ginette L. Milanes, U.S. Attorney's Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

AIDA M. DELGADO–COLÓN, Chief Judge.

■ Currently before the Court is U.S. Magistrate Judge Justo Arenas' Report and Recommendation ("the R & R") recommending the dismissal of this action. **ECF No.** 11. Objections have not been filed to the R & R.

### I. Procedural History

On December 17, 2013, plaintiff Santiago Eduardo Padilla–Gómez ("Santiago" or "plaintiff") filed a complaint against the Commissioner of Social Security ("the Commissioner" of "defendant"), requesting a judicial review of a final decision of the Commissioner which denied plaintiff's application for a period of disability and Social Security disability insurance benefits. **ECF No. 1.**

On May 2, 2014, the Court referred the case to Magistrate Judge Arenas for a Report and Recommendation or for disposition of the case. **ECF No. 6.** On September 9, 2014, the Magistrate Judge entered the R & R, recommending that the case be dismissed. **ECF No. 11.** No objections have been filed to the R & R.

### II. Standard of Review of an Unopposed Report and Recommendation

■ A district court may refer pending civil actions or proceedings to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); D.P.R. Civ. R. 72(a). The court is free to accept, reject, or modify, in whole or in part, the findings or recommendations by the magistrate judge. 28 U.S.C. § 636(b)(1). A party is entitled to a *de novo* review of "those portions of the report ... to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (citing

*United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)).

█ Absent a proper objection, though, the Court need only satisfy itself that there is no plain error in the Magistrate Judge's findings in order to adopt the same. *López Mulero v. Vélez Colón,* 490 F.Supp.2d 214, 217–218 (D.P.R.2007); *see also* Fed.R.Civ.P. 72, Adv. Comm. Notes, subdivision (b) (1983). Thus, "a party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals." *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir.1998).

### III. Conclusion

After careful consideration of the law, the record, the parties' pleadings and evidence, and the unopposed R & R, the Court ADOPTS Magistrate Judge Arenas' recommendation.

Accordingly, the final determination of the Commissioner is affirmed and the petition for review is **DENIED.**

The Clerk of Court will enter judgment accordingly.

**SO ORDERED.**

### MAGISTRATE JUDGE REPORT AND RECOMMENDATION

JUSTO ARENAS, United States Magistrate Judge.

On December 17, 2013, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied his application for a period of disability and Social Security disability insurance benefits. Plaintiff sought review of this decision by the Appeals Council, which notified plaintiff on October 25, 2013 of its decision to deny his request for review. (Tr. at 1–3). The answer to the complaint was filed on April 28, 2014 (Docket No. 4). Plaintiff filed a memorandum against the final decision of the Commissioner on June 29, 2014 (Docket No. 8) and the defendant filed a memorandum in support of the final decision on July 28, 2014 (Docket No. 10).

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole. In order to be entitled to such benefits, plaintiff must establish that he was disabled under the Social Security Act from October 1, 2008, the alleged onset date of disability, through June 30, 2010, the date plaintiff last met the earnings requirements for disability benefits under the Act. *See Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d 136, 140 n. 3 (1st Cir.1987); *Deblois v. Sec'y of Health & Human Servs.,* 686 F.2d 76, 79 (1st Cir.1982).

After evaluating the evidence of record, Administrative Law Judge Lissette M. Figueroa entered the following findings on February 3, 2012:

1. The claimant met the insured status requirements of the Social Security Act on June 30, 2010.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 1, 2008 through his date last insured of June 30, 2010 (20 CFR § 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: cervical, thoracic and lumbar pain, diabetes mellitus and moderate depressive disorder (20 CFR § 404.1520(c)).

4. Through the date last insured, the claimant did not have an impair-

ment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant was able to lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently; sit, stand/walk for six hours in an eight-hour work day, frequently climb ramp/stairs, occasionally climb ladder, ropes and scaffolds, frequently balance and occasionally stoop, kneel crawl and crouch. He did not have any limitations pushing and pulling, reaching with the arms above shoulder level, reaching with the arms waist to chest levels and/or performing gross and fine manipulations. The claimant could have tolerated extreme temperatures of cold, vibration and exposure to unprotected heights occasionally. His emotional condition limited him to simple, repetitive and routine activities, he was able to make simple work related decisions and to understand and remember short-simple instructions, he could have contact with the public and his co-workers and supervisors and was able to respond appropriately to supervisors, co-workers and to changes of tasks, to maintain regular attendance and punctuality and complete tasks within the work schedule.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 11, 1957 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2008, the alleged onset date, through June 30, 2010, the date last insured. (20 CFR § 404.1520(g)).

Tr. at 40–47.

The administrative law judge ended the sequential inquiry at step five. At this level, it has already been determined that the claimant cannot perform any work he has performed in the past due to a severe impairment or combination of impairments. The inquiry requires a consider-

ation of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work. If the claimant cannot do other work, a finding of disability will follow. *See* 20 C.F.R. § 404.1520(f). At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy given the above factors. *See Nguyen v. Chater*, 172 F.3d 31 (1st Cir. 1999); *Lancellotta v. Sec'y of Health & Human Servs.*, 806 F.2d 284, 284 (1st Cir. 1986); *Vázquez v. Sec'y of Health & Human Servs.*, 683 F.2d 1, 2 (1st Cir.1982); *Rodriguez–Gonzalez v. Astrue*, 854 F.Supp.2d 176, 180 (D.P.R.2012); *Hatcher v. Commissioner of Social Security*, 770 F.Supp.2d 452, 457 (D.P.R.2011); *cf. Rivera–Tufiño v. Commissioner of Social Sec.*, 731 F.Supp.2d 210, 213 (D.P.R.2010).

Plaintiff has the burden of proving that he has become disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Camacho v. Astrue*, 978 F.Supp.2d 116, 117 (D.P.R. 2013). A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months. *See* 42 U.S.C. § 416(i)(1). In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits. There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity. *See McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1120 (1st Cir.1986). Partial disability does not qualify a claimant for benefits. *See Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir.1965); *Mercado v. Commis-sioner of Social Security*, 767 F.Supp.2d 278, 281 (D.P.R.2010).

Plaintiff argues in a terse memorandum of law that the Appeals Council refused to review the administrative law judge's decision in spite of having received additional pertinent medical evidence which supported plaintiff's complaints since the date last insured. (Docket No. 8 at 2). Petitioner also argues that the final decision is predicated on the GRID, Rule 202.14, which considers that plaintiff is able to do a full range of light efforts and communicate in English (Tr. at 32–51). He argues that it is clear that plaintiff is unable to communicate in English (Tr. at 57), and is unable to do a full range of "light", maybe sedentary work. Thus the applicable GRID Rules 201.10 and/or 201.14.16 direct a finding of "disabled."

Plaintiff notes that the first two hypothetical questions to the vocational expert were unspecific and suggestive: assuming claimant can do light work. The second hypothetical question and answer were not discussed in the final decision, but provided a basis for disability. He stresses that his statements remain uncontroverted, especially in regard to pain, a factor mentioned throughout the record. Plaintiff thus seeks reversal of the final decision and remand.

The Commissioner responds that the residual functional capacity presented to the vocational expert that the administrative law judge relied on was for a limited range of light, not sedentary, work and the corresponding GRID Rule 202.14 (light work) does not direct a finding of disability and does not consider plaintiff's ability to communicate in English at this level of light work. The Commissioner notes that when there are significant nonexertional limitations, as there are here, sole reliance on the GRID is improper, thus vocational expert testimony is necessary. (Docket No.

10 at 6–7). The Commissioner also defends the hypothetical questions and the findings of the administrative law judge based on the relevant answers to the questions. *See Camacho v. Astrue,* 978 F.Supp.2d at 122.

The Commissioner also notes that the medical evidence submitted to the Appeals Council did not relate to the relevant period and therefore, there was no error in ignoring such evidence.

## A. ADMINISTRATIVE HEARING

At the January 12, 2012 administrative hearing held in Mayaguez, Puerto Rico, plaintiff testified and was represented by Pablo Portalatin, non-attorney. Vocational expert Ariel Cintrón Antonmarchi testified assuming hypothetical questions related to factors in the record.

Plaintiff testified that he is married, has a valid driver's license and drives with difficulty. He described pain he sometimes suffers when he drives. (Tr. at 56). He sometimes drives 30 minutes depending on traffic. He drove to the hearing from Sabana Grande. Plaintiff noted that he is fluent in Spanish and lax in English. (Tr. at 57). He completed high school and has received vocational training in the process. He noted disability since October 1, 2008 because of the five damaged discs he has and the doctor's prognosis that if he worked he could end up in a wheelchair. Plaintiff described the pain in his back and numbness through the legs, both of which make him uncomfortable in the bathroom setting (Tr. at 62–63). He does not need help showering but his wife helps him getting out of the bathroom. All of this causes him anxiety, depression and insomnia. He is being treated by Dr. Jose A. Ramirez, or at least the record reveals treatment until May 13, 2011. (Tr. at 65). Plaintiff testified that he generally sees Dr. Ramirez on a monthly basis. Plaintiff

takes medication for pain, muscle spasms, anxiety, depression, and gastritis. (Tr. at 69–70).

Plaintiff stated that he can sit for 20 minutes and stand for up to 10 minutes. He does not a cane and can walk for about 20 minutes. He can carry about 10 pounds but that 20 would result in discomfort. His concentration is problematic and he forgets things lately. He spends his days on the balcony and eating (Tr. at 74–75). He prepares fast food. He draws nonsense, reads magazines and newspapers.

Plaintiff referred to his sugar level as abnormal and his vision becomes blurred, with and without glasses. He generally falls asleep by 1 a.m. and is awake by 4 a.m. (Tr. at 77). This happens two or three times a week. Plaintiff attends church on Fridays and Sundays with his 30–year old son. The services can last two or one and a half hours.

On questioning from his representative, plaintiff noted that his hands get numb, and his arms lose strength due to his cervical vertebra problem according to doctors.

Vocational expert Ariel Cintron Antonmarchi testified about the jobs plaintiff had performed as a welder. When asked a hypothetical question, the vocational expert testified that plaintiff could not perform that type of work under the circumstances. However, he noted there were other jobs in the national economy that plaintiff could perform, such as Production Line Solderer (welding) (Tr. at 89), and Can Filling and Closing Machine Tender, Electronics Worker (Tr. at 90–91).

A second hypothetical question was asked, keeping the same academic and vocational profile, but adding limitations, such as no bending at the waist, no squatting and no crawling, and occasionally maintaining his balance, kneeling. The vo-

cational expert stated that the prior jobs could not be performed under the circumstances, nor could he perform other jobs because of his rigidity.

A third hypothetical question was asked with another set of limitations. (Tr. at 93). The vocational expert stated that he could not perform any work because plaintiff's previous job required medium levels of exertion with skills that were not transferable, and the premise contemplated is of sedentary work, but not a full range. (Tr. at 94). The expert then made reference to the GRID and Rule 201.14, that is, a person who is approaching advanced age, has a high school education, and has experience as a welder with no transferability of skills. The vocational expert felt that the person could not perform a sedentary job.

The administrative law judge left the record open to consider any documents submitted concerning Dr. Ramirez's treatment. (Tr. at 95).

## B. ANALYSIS

### 1. RESIDUAL FUNCTIONAL CAPACITY: GRID

▮▮▮ The administrative law judge used the GRID as a framework for decision-making and not mechanically. In relation to plaintiff's residual functional capacity, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines, known as the Grid, is appropriate. *See Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520, 524 (1st Cir.1989); *Rodriguez–Gonzalez v. Astrue*, 854 F.Supp.2d at 185; Even where a nonexertional impairment is significant, as it is in the case of Mr. Padilla–Gomez, the Grid may still be used as "a framework for consideration of how much the individual's work capability is

further diminished." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1997); *Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d at 524.

If the applicant's limitations are exclusively exertional, then the Commissioner can meet [the] burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical–Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1–3 (2001), *cited in* 20 C.F.R. § 416.969; *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). "The Grid," as it is known, consists of a matrix of the applicant's exertional capacity, age, education, and work experience. If the facts of the applicant's situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), *cited in* 20 C.F.R. § 416.969. However, if the applicant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, *id.* § 200(e))[,] that restrict [her] ability to perform jobs [she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision." 20 C.F.R. § 416.969a(d) (2001).

*Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir.2001); *Rodriguez–Gonzalez v. Astrue*, 854 F.Supp.2d at 185. In the case before the court, the administrative law judge correctly used Medical–Vocational Rule 202.14, codified in 20 C.F.R. Part 404, Subpart P, Appendix 2, as a framework for decision-making, since the matrix cannot otherwise be used under the circumstances. (Tr. at 46, 47). Specifically, the administrative law judge noted that plaintiff's ability to perform all or substantially all of the requirements of light work was

impeded by additional limitations. Thus the questions to the vocational expert as to the erosion on the light, unskilled occupational base which these limitations caused. (Tr. at 46). The administrative law judge noted that, given plaintiff's age, education, work experience, and residual functional capacity, the vocational expert testified to jobs which plaintiff could perform existing in the national economy.

The administrative law judge considered plaintiff's allegations of persistent back pain and discomfort. She noted that even with a later diagnosis of radiculopathy, there is no objective evidence to corroborate such a diagnosis, such as neurological examinations, CT scans and/or MRIs. Also noted was that there was no following treatment except for pain medication. (Tr. at 45). *See* 20 C.F.R. § 404.1529, SSR 96–4p, SSR 96–7p; *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19 (1st Cir.1986). The factors to be weighed under the correct standard are the following:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also* SSR 96–7p.

While the administrative law judge agreed that the conditions suffered by plaintiff are capable of causing the symptom alleged, she noted that they were not of such disabling frequency and intensity as to prevent plaintiff from performing light, simple, repetitive, unskilled work activity. (Tr. at 44). This was corroborated by the nature of the medical treatment, the response to treatment without adverse side-effects and by the absence of persistently disabling musculoskeletal, endocrine and mental pathology. The administrative law judge emphasized that notwithstanding the symptoms, plaintiff took care of his personal needs and had adequate interpersonal relationships. The administrative law judge noted that much of the treatment of record was provided after plaintiff ceased to be insured for disability insurance benefits. For example, radiculopathy was diagnosed over a year after plaintiff ceased to be insured. As to the depressive disorder, plaintiff never sought treatment for it during the covered period but rather after the term for insurance benefits had expired.

## 2. EVIDENCE BEFORE THE APPEALS COUNCIL

Plaintiff submitted evidence after the final decision of February 3, 2012. That evidence, which plaintiff apparently claims relates to the covered period, is a lumbar spine CT scan dated September 19, 2012 along with related notes. (Tr. at 6–12, 14–21). This evidence is created two years after the date last insured. The evidence can hardly be considered new and material. See 20 C.F.R. § 404.970(b). *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996); *cf. Sanchez–Ortiz v. Commissioner of Social Sec.,* 995

F.Supp.2d 53, 56–57 (D.P.R.2014). A review of the evidence does not *a fortiori* reflect a relation back to the covered period aside from the argument in plaintiff's memorandum. And with or without such evidence, there is substantial evidence in the record to sustain the final decision.

## C. CONCLUSION

 I conclude that the final decision reflects a reasonable balancing and weighing of evidence and the traditional making of credibility determinations by the administrative law judge. *See Gray v. Heckler,* 760 F.2d 369, 374 (1st Cir.1985); *Tremblay v. Sec'y of Health & Human Servs.,* 676 F.2d 11, 12 (1st Cir.1982); *Rodríguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981). The court's function is to ascertain whether there is evidence in the record to sustain the administrative law judge's reasoning. "Substantial evidence" is more than a "mere scintilla," *see Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), in other words, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.; see Currier v. Sec'y of Health & Human Servs.,* 612 F.2d 594, 597 (1st Cir.1980). Along that line, the power to resolve conflicts in the evidence lies with the Commissioner, not the courts. *Id.; see Barrientos v. Sec'y of Health & Human Servs.,* 820 F.2d 1, 2–3 (1st Cir.1987). In the resolution of such conflicts, I cannot say that the substantial evidence rule has been violated. And if there is a substantial basis in the record for an administrative law judge's decision, the court must affirm the decision, whether or not another conclusion is possible. *See Ortiz v. Sec'y of Health & Human Svcs.,* 955 F.2d 765, 769 (1st Cir.1991); *Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d at 144.

In view of the above, I find that the administrative law judge has complied with the requirements of the substantial evidence rule. *See Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. 1420 (1971). Since there is no good cause to remand, it is my recommendation that the final decision of the Commissioner be affirmed and that this action be dismissed.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *School Union No. 37 v. United Nat'l Ins. Co.,* 617 F.3d 554, 564 (1st Cir. 2010); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987).